FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 05, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

PAULINE S.,[1]

                Plaintiff,

     v.

MARTIN O'MALLEY Commissioner of
Social Security,[2]

                Defendant.

No.   2: 23-cv-00214-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), he is hereby substituted for Kilolo Kijakazi as the defendant.

Due to a back injury, arthritis, anxiety, vertigo, a heart condition, and carpal tunnel syndrome, Plaintiff Pauline S. claims that she is unable to work fulltime and applied for disability insurance benefits. She appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the examining medical sources, Dr. Massoud, PA Fine, and Dr. Genthe; and the ALJ improperly assessed Plaintiff's credibility. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In November 2019, Plaintiff filed applications for benefits under Title 2, claiming disability beginning January 28, 2016, based on the physical and mental impairments noted above.[3]

After the agency denied Plaintiff benefits, ALJ Palachuk held a telephone hearing in May 2022, at which Plaintiff appeared with her representative.[4]  Plaintiff and a vocational expert testified.[5]

---

[3] AR 272.

[4] AR 97-121.

[5] *Id.*

After the hearing, the ALJ issued a decision denying benefits.[6] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[7] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Louis Martin, MD, and Myron Watkins, MD, to be persuasive.

- The 2018 opinions of consultative examiner Ryan Massoud, DO, to be persuasive.

- The 2020 opinions of consultative examiner David Fine, PA-C, to be not persuasive.

- The November 2020 opinions of consultative examiner Thomas Genthe, PhD, to be persuasive.

- The January 2018 opinions of consultative examiner Thomas Genthe, PhD, to be not persuasive.

- The opinions of state agency evaluators Eugene Kester, MD, and Julian Lev, PhD, to be somewhat persuasive.

---

[6] AR 14-35.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[7] AR 27-32.

The ALJ also found the third-party function report completed by Plaintiff's spouse to be not entirely consistent with the medical evidence of record.[8] As to the sequential disability analysis, the ALJ found:

- Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2021.

- Step one: Plaintiff had not engaged in substantial gainful activity from January 28, 2016, the alleged onset date, through March 31, 2021, her date last insured.

- Step two: Plaintiff had the following medically determinable severe impairments: coronary artery disease, status post coronary artery bypass/grafting, mild to moderate degenerative changes of the lumbar spine, carpal tunnel syndrome (CTS), obesity, and agoraphobia.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform medium work with the following exceptions:

   She can never climb ladders/ropes/scaffolds, but can frequently climb ramps/stairs, and frequently balance, stoop, kneel, crouch, and crawl. She is limited to occasional overhead reaching. She is limited to frequent not constant handling bilaterally. She must avoid concentrated exposure to extreme temperatures, vibration, and respiratory irritants (such as fumes, odors, dusts,

---

[8] AR 31-37.

1
2
3
4

gases and poor ventilation), and have no more than moderate exposure to hazards such as unprotected heights and dangerous moving machinery.  She is able to understand, remember and carry out simple, routine tasks.  She can maintain concentration, persistence and pace for 2-hour intervals between regularly scheduled breaks.  She needs a predictable work environment with seldom change.

5
6

- Step four: Plaintiff is able to perform her past relevant work as a housekeeper/maid.

7
8
9
10
11

- Step five: in the alternative, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a garment sorter (DOT 222.687-014), mail clerk (DOT 209.687-026), and cleaner II (DOT 919.687-014).[9]

12
13

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[10]

14

## II.   Standard of Review

15
16

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[11] and such error impacted the nondisability

17
18
19
20
21
22
23

---

[9] AR 19-29.

[10] AR 266.

[11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

1    determination.[12] Substantial evidence is "more than a mere scintilla but less than a

2    preponderance; it is such relevant evidence as a reasonable mind might accept as

3    adequate to support a conclusion."[13]

4                                    **III.    Analysis**

5           Plaintiff seeks relief from the denial of disability on two grounds. She argues

6    the ALJ erred when evaluating the medical opinions and when evaluating

7    Plaintiff's subjective complaints.  As is explained below, the Court concludes that

8    the ALJ erred in her evaluation of the medical opinion evidence and that the ALJ's

9    analysis contains consequential error.

10

11    _____

12    [12] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

13    *grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an

14    ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

15    nondisability determination").

16    [13] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

17    1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

18    court "must consider the entire record as a whole, weighing both the evidence that

19    supports and the evidence that detracts from the Commissioner's conclusion," not

20    simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

21    143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

22    not indicate that such evidence was not considered[.]").

23

1

**A.      Medical Opinion: Plaintiff establishes consequential error**

2        Plaintiff argues the ALJ erred in her evaluation of the medical opinions.[14]

3  Specifically, Plaintiff argues that the ALJ erred in finding the opinions of

4  Dr. Massoud regarding Plaintiff's limitations due to congestive heart disease and

5  carpal tunnel syndrome to be more persuasive than those of PA Fine, and erred in

6  failing to adequately explain her consideration of Dr. Genthe's 2018 opinion and in

7  ignoring a portion of Dr. Genthe's 2020 opinion which conflicted with her

8  formulated RFC.

9        1.      Standard

10        The ALJ was required to consider and evaluate the persuasiveness of the

11  medical opinions and prior administrative medical findings.[15] The factors for

12  evaluating the persuasiveness of medical opinions and prior administrative

13  medical findings include, but are not limited to, supportability, consistency,

14  relationship with the claimant, and specialization.[16] Supportability and consistency

15

16  _____

17  [14] An ALJ must consider and articulate how persuasive she found each medical

18  opinion, including whether the medical opinion was consistent with and supported

19  by the record. 20 C.F.R. §§ 404,1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792

20  (9th Cir. 2022).

21  [15] 20 C.F.R. § 404.1520c(a), (b).

22
   [16] 20 C.F.R. § 404.1520c(c)(1)–(5).
23

are the most important factors,[17] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[18] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[19]

2.    Plaintiff's Testimony

On May 12, 2022, Plaintiff appeared with her attorney for a telephone hearing before ALJ Palachuk.[20]  The Plaintiff testified and a vocational expert, William Weiss, testified.[21]  Plaintiff testified that at the time of the hearing she was fifty years old and that she had completed to the seventh grade and only attended one month of classes in the eighth grade before dropping out.[22]  She said

---

[17] *Id.* § 404.1520c(b)(2).

[18] *Id.* § 404.1520c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[19] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[20] AR 97-121.

[21] *Id.*

[22] AR 102.

she did not get a GED and had been married since 2002.[23] She was living with her husband, her nineteen-year-old daughter, and her nineteen-year-old niece.[24]  She said that in 2016 she was working full-time but left that job when she went for a test and was sent for open-heart surgery.[25]

Plaintiff said she tried to return to work at Home Depot in 2017 but was always nauseated and lightheaded due to the medication and could not do the job.[26] She said that she is still taking the medication.[27]  Plaintiff said that the medication still makes her nauseated, lightheaded, and dizzy and that she needs to sit for a little while, but that it has less side effects than other medications tried.[28] She said that the dizziness lasts most of the day but she takes it at night now so she is not as a nauseated but still has dizziness.[29] Plaintiff said that she will spend a typical day eating breakfast, doing laundry, and then feeding the dogs but that she cannot lift the bag of dog food.[30]

---

[23] *Id.*

[24] *Id.*

[25] AR 103.

[26] *Id.*

[27] *Id.*

[28] AR 104.

[29] AR 104-105.

[30] AR 105.

Plaintiff said she has a short attention span and has had problems lifting things and changed her plates to lighter plates because she was dropping things.[31] Plaintiff said she can lift a gallon of milk with both hands but could not do that multiple times, and that she would need to take a breath after walking about half a block.[32] Plaintiff said she has swelling in her legs which is worse at night and that she takes water pills but needs to elevate her feet for about an hour three times a week.[33]  She said that when she sits she has to elevate her feet or they get "poofy."[34]

Plaintiff testified that her family cooks and that everyone cleans, and that she has problems with her grip where things will slide out of her hands.[35] She said she has problems with fine manipulation and gets help from her family.[36] Plaintiff said she gets very anxious being around people and that her doctor gave her something to make her less anxious to shop but it does not always work and four times in the last four months she has had to leave the store and go wait for her

---

[31] AR 106.

[32] AR 107.

[33] AR 108-109.

[34] AR 109.

[35] *Id.*

[36] AR 110.

family in the car.[37]  She said she goes shopping twice a month and that when she

has a panic attack she get sweaty, nauseated, anxious, and overwhelmed.[38]

Plaintiff said the panic attacks started after her heart surgery.[39]

Plaintiff said her attention is limited and she cannot watch a thirty-minute

show and can only read about one page, and has taken Omega 3 supplements.[40]

Plaintiff said that she and her family use post it notes and a board in the kitchen to

write down reminders for her.[41]  She said she can only exert herself for about

fifteen to twenty minutes and then needs a break.[42]  While on the phone for the

hearing, she had shifted position and propped her leg up.[43]  Plaintiff said she still

has back pain when she bends or turns and was in physical therapy.[44]  She said

she cannot lift over her head.[45]

---

[37] AR 111.

[38] *Id.*

[39] *Id.*

[40] AR 112.

[41] *Id.*

[42] AR 113.

[43] *Id.*

[44] AR 113-114.

[45] AR 114.

3.    <u>Relevant Medical Records</u>

On September 11, 2019, Plaintiff presented to Matthew Hardy, DO, with complaints of issues with her hands.[46]  She said that she had problems with her hands for the last year, they had recently worsened significantly, she could not grasp things without pain, and she had to use a heating pad for pain.[47]  On examination, she had decreased grip strength.[48]  Plaintiff also had a positive Tinel's sign and Phalen's sign, left worse than right, and was diagnosed with carpal tunnel syndrome, bilaterally and prescribed braces.[49]

On February 6, 2020, Plaintiff presented to Dr. Hardy for follow-up and with complaints of imbalance.[50]  On examination, Plaintiff had a positive Tinel's sign and Phalen's sign, left worse than right, and was diagnosed with carpal tunnel syndrome.[51]

On December 28, 2020, Plaintiff presented to Dr. Hardy with complaints of numbness and tingling in her hands.[52] On examination, Plaintiff had positive

---

[46] AR 701.

[47] *Id.*

[48] *Id.*

[49] AR 704.

[50] AR 695.

[51] *Id.*

[52] AR 1086.

Tinel's sign. [53] Dr. Hardy ordered an EMG and nerve conduction study.[54]  On

January 11, 2021, Plaintiff was seen at Columbia Physical Therapy, and it was

noted that she had symptoms consistent with carpal tunnel syndrome and had also

demonstrated nerve involvement on her cervical spine in a recent test.[55]  On

examination Plaintiff had diminished sensation on the right, reduced grip on right,

positive Phalen's and reverse Phalen's bilaterally, and positive Spurling's on the

right.[56]

On February 25, 2021, Plaintiff underwent a nerve conduction study which

was slightly abnormal with finding of C8-T1 radiculopathy without evidence of

ongoing denervation.[57] An MRI was recommended to assess possible nerve root

impingement at C7-T1 or T1-T2.[58]

On March 8, 2021, Plaintiff presented to Dr. Hardy, who noted on

examination that she had cervical radiculopathy bilaterally with spurring, and

positive Faber's on right.[59]  Dr. Hardy noted that he referred Plaintiff to a

---

[53] *Id.*

[54] *Id.*

[55] AR 1201.

[56] *Id.*

[57] AR 1144-1145, 1183.

[58] *Id.*

[59] AR 1163.

physiatrist and would request an MRI of the cervical spine.[60]  An X-ray on the same day indicated degenerative disc disease at C3-T1, with small osteophytes from C4 to C7.[61]

4.    Analysis

The Court will address the ALJ's evaluation of Dr. Massoud and PA Fine's opinions as one issue, as the ALJ compared them in her evaluation.

a.    *The ALJ's consideration of Dr. Massoud and PA Fine's opinions regarding Plaintiff's limitations due to carpal tunnel syndrome*

Dr. Massoud examined Plaintiff at the request of the Commissioner on April 7, 2018.[62]  Dr. Massoud conducted a fairly thorough examination of Plaintiff and noted that she had equal biceps, brachioradialis, triceps, patellar, Achilles, and plantar deep tendon reflexes.[63]  Dr. Massoud noted that Plaintiff had a normal gait and was able to sit and stand without assistance.[64] Dr. Massoud noted that Plaintiff had full strength in her deltoid, biceps, triceps, wrists, fingers and grip.[65]

---

[60] AR 1164.

[61] AR 1179.

[62] AR 621-626.

[63] AR 623.

[64] AR 624.

[65] *Id.*

Dr. Massoud also noted that Plaintiff was able to make a fist, pick up coins from a flat surface, and tie her shoes.[66] Notably, Dr. Massoud concluded that there was no Waddell's sign, meaning that he did not believe that Plaintiff was less than truthful in reporting her symptoms.[67]

PA Fine examined Plaintiff more than two and a half years later, on November 14, 2020, at the request of the Commissioner.[68]  PA Fine's findings were similar to Dr. Massoud's that Plaintiff was able to rise and sit without problem and had a non-antalgic gait.[69]  PA Fine noted that Plaintiff could make a fist and could pick up a paperclip, but noted that her hands had a gross deformity and showed outward signs of arthritis and that her grip was slightly decreased on the left.[70] PA Fine also noted a mild to moderate lordosis in the lumbar spine, as well as decreased range of motion; slightly decreased range of motion of the hips; and normal range of motion in the knees and ankles.[71]  PA Fine diagnosed Plaintiff with degenerative joint disease of the lumbar spine and bilateral hand pain and

---

[66] *Id.*

[67] *Id.*

[68] AR 1066-1074.

[69] AR 1067-1068.

[70] AR 1068-1069.

[71] AR 1070-1071.

stiffness.[72]  PA Fine opined that Plaintiff would be limited to standing for 4 hours,

walking 5 hours, and sitting 6 hours based on degenerative joint disease with

radiculopathy.[73]  PA Fine opined that Plaintiff would be limited to lifting and

carrying no more than 15 pounds occasionally and 5 pounds frequently based on

her hand pain and stiffness.[74]

The ALJ found Dr. Massoud's opinion somewhat persuasive and in doing so

stated the following reasoning:

> The physician had the opportunity to examine the claimant, and
> supported the opinion with clinical, objective findings, records review,
> and narrative explanation (e.g., reported chronic back pain supported
> on exam with minor palpable tenderness over lumbar paraspinal
> muscles but otherwise normal musculoskeletal and neurological exams
> with normal range of motion throughout the upper and lower
> extremities, no motor, sensory, reflex or coordination deficits, no muscle
> atrophy/asymmetry, and normal gait with no unsteadiness/no assistive
> devices) (Id/3-5).  However, the opinion is based on a one-time,
> consultative examination in April 2018, and as a non-treating provider,
> the opinion lacks the perspective of an established, longitudinal
> treating relationship/history.  Based on the entire longitudinal record,
> including evidence received at the hearing level, and considering the
> combined effect of claimant's lumbar spine, carpal tunnel, and
> cardiology conditions, the undersigned finds that the totality of the
> evidence supports the assessment of limitations in lifting/carrying and
> standing walking at the medium exertional level with additional
> postural,    manipulative/overhead    reaching/handling,    and
> environmental/hazard limitations, as set forth above.  Nevertheless,
> Dr. Massoud's opinion reinforces that claimant's impairments would

---

[72] AR 1071.

[73] AR 1073.

[74] Id.

not preclude her from working at the medium exertional level subject to appropriate restrictions as above.[75]

While the ALJ acknowledges the fact that evidence later received indicated a diagnosis of carpal tunnel syndrome, she did not address the fact that Dr. Massoud examined Plaintiff and rendered his opinions before she began experiencing any symptoms of carpal tunnel disorder.[76] The ALJ states in her reasoning that despite the fact that Dr. Massoud did not examine Plaintiff while she was suffering from carpal tunnel, his opinion reinforces her own finding that carpal tunnel syndrome did not preclude Plaintiff from engaging in work at the medium exertional level.

Despite acknowledging that the new evidence was inconsistent with Dr. Massoud's opinions, the ALJ accepted his opinion as persuasive and relied upon her own judgement as to the additional limitations which might have resulted from the degeneration of Plaintiff's condition. This is error. First, there is no indication that the ALJ has medical training which would allow her to interpret the raw medical data and make her own medical assessment of the

---

[75] AR 33.

[76] *Id.*

1    functional limitations caused by Plaintiff's nerve root impingement.[77]  Secondly,

2    the ALJ has not explained how she arrived at her conclusions that Plaintiff's carpal

3    tunnel syndrome would result in the limitations provided for in her formulated

4    RFC.  Instead, she offered a conclusory opinion of the expected limitations.[78]  Even

5    if a more thorough explanation for the additional limitations had been provided by

6    the ALJ, her reasoning as to the persuasiveness of Dr. Massoud's opinions would

7    be flawed.

8        The ALJ's consideration of PA Fine's opinion is tainted by this error in its

9    analysis of the consistency factor and flawed in its analysis of the supportability

10   factor as well.  First, the ALJ reasoned the following with regard to the

11   supportability of PA Fine's opinion:

12       It is based on a one-time consultative examination in November 2020,
         and the examiner has no  treating history with the claimant for the
13       conditions diagnosed.  While the examiner supported the opinion with
         clinical, objective exam findings and narrative report, the assessed
14       degree of limitations, particularly the maximum lifting/carrying and
         standing/walking capacity assessments essentially at a reduced
15       light/sedentary exertional work-level, are inconsistent with the
         examiner's own findings.  For example, the examiner's only noted
16       abnormalities on exam were "mild/moderate" lordosis of the claimant's

17   _____

18   [77] ALJs cannot usurp the role of doctors when interpreting medical evidence,

19   particularly highly technical medical evidence. *Trevizo v. Berryhill*, 871 F.3d 664,

20   683 (9th Cir. 2017).

21

22   [78] *See Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014).

23

DISPOSITIVE ORDER - 18

lumbar spine with some decreased or "slightly" decreased ranges of motion, and "mild discomfort" with range of motion, as well as bilateral hand pain/stiffness and "slightly" decreased strength of left hand (Id/6, 7). However, as indicated by the exam notes, the claimant's findings were otherwise largely normal including normal gait and station, negative Romberg test, ability to walk without assistive device, as well as normal/full motor strength in the upper and lower extremities, with intact sensation, normal muscle bulk, and normal straight leg raise test bilaterally (Id/4-7).[79]

The ALJ ignores the crucial fact that on examination PA Fine found that Plaintiff had an obvious deformity in her hands. This is consequential because that objective finding supports PA Fine's opinions regarding Plaintiff's limitation to lifting and carrying no more than 15 pounds.

The ALJ erred in her analysis of the consistency factor when evaluating PA Fine's opinions. She reasoned as follows:

> The examiner's assessed limitations at the light-sedentary level are further inconsistent with other evidence in the record including the claimant's other neuromuscular exams and reported high functioning activities of daily living, discussed above (particularly, consistently normal neurological exams aside from some decreased grip strength; ability to complete household chores, cooking, driving, shopping, gardening, taking dog on mile-long walks). The opinion is also contradicted by the other medical opinions of record, including consultative medical examiner Dr. Massoud, as well as the assessments by the state agency reviewing medical consultants Dr. Martin and Dr. Watkins, assessing capacity medium exertional level work capacity, based on review of the longitudinal record.[80]

---

[79] AR 33-34.

[80] AR 34.

In most regards, PA Fine's opinions are consistent with Dr. Massoud's. The most significant difference in their opinions is that PA Fine restricted Plaintiff's ability to lift and carry based upon her carpal tunnel syndrome. As was noted above, Dr. Massoud's examination of Plaintiff took place on April 7, 2018.[81] Plaintiff's treatment for carpal tunnel was first noted on September 11, 2019, when she first reported to Dr. Hardy that she had pain in her hands since approximately September 2018 but it had significantly worsened recently and he found her positive for Tinel's and Phalen's signs.[82] In the following two years, Plaintiff was noted on a number of occasions to have positive Tinel's signs and Phalen's sign and an objective nerve conduction study confirmed the diagnosis of carpal tunnel syndrome.[83] Rather than analyze PA Fine's opinion as to its consistency with treatment records relevant to Plaintiff's treatment for carpal tunnel syndrome, the ALJ compared PA Fine's opinion to those of an examination that took place before she had carpal tunnel syndrome. It is not surprising in that context that Dr. Massoud's finding would be inconsistent. It was error for the ALJ to consider Dr. Massoud's finding in relation to Plaintiff's carpal tunnel.

---

[81] AR 621.

[82] AR 701.

[83] AR 1021.

1    The Court concludes that remand is warranted for the ALJ to properly

2    consider the opinion evidence and to evaluate the record as a whole, including the

3    recent evidence regarding carpal tunnel syndrome.

4         b.    _The ALJ's consideration of Dr. Genthe's 2020 opinions_

5         Dr. Genthe rendered two opinions regarding the limitations assessed as a

6    result of Plaintiff's mental impairments, the first in January 2018[84] and the second

7    in November 2020.[85]    Because Plaintiff's arguments focus on the latter November

8    2020 opinions, the Court will address only Dr. Genthe's 2020 opinions.    Plaintiff

9    alleges that the ALJ erred by finding that Dr. Genthe's November 2020 opinions

10   were persuasive but then formulating an RFC in conflict with Dr. Genthe's opinion

11   that, "Despite having taken prescribed medication for some time, her current

12   regimen does not appear to be adequately targeting interfering symptoms, which

13   are likely to interfere with her ability to initiate or maintain future employment."[86]

14        The ALJ addressed Dr. Genthe's November 2020 opinion as follows:

15            As to the claimant's functional assessment, Dr. Genthe concluded that
16            she is able to maintain a regular, full-time work schedule for simple,
             unskilled work without social limitations (Id).   Specifically, as to social
17            function, Dr. Genthe assessed the claimant as "unimpaired" in the
             ability to interact appropriately with the public, the ability to ask
18            questions/accept instructions from supervisors, the ability to get along
             with coworkers/peers, and the ability to respond appropriately to
             criticism from supervisors.   As to cognitive function, while Dr. Genthe

19

20   _____

     [84] AR 614-618.
21
     [85] AR 1076-1081.
22
     [86] ECF No. 7, at 15, quoting AR 1080.
23

assessed that the claimant is "unlikely" able to understand and remember detailed instructions, and unlikely able to carry out complicated or detailed instructions in a reasonable amount of time, the psychologist concluded she is likely able to understand and remember short, simple instructions, able to carry out short, simple instructions in a reasonable amount of time, and able to maintain attention and concentration for brief periods of time but unlikely for extended periods of time, and she is likely able to perform work-like activities at a consistent pace. Dr. Genthe also assessed that the claimant is "unlikely" able to respond appropriately to changes in the work setting, however, he concluded she is "able to maintain a regular work schedule and complete a normal 40-hour work-week based on the aforementioned criteria" (Id/6). This opinion is persuasive.[87]

Plaintiff is correct that the ALJ addressed the inconsistency in Dr. Genthe's opinion that he opines Plaintiff would likely not be able to respond appropriately to changes in a work setting but did not address the fact that Dr. Genthe opined that Plaintiff's symptoms are likely to interfere with her ability to obtain and maintain employment.

The Court is constrained to the reasons and supporting explanation offered by the ALJ.[88] The ALJ must articulate her findings and cite to supporting evidence in a way that permits the Court to meaningfully review the ALJ's findings.[89] While

---

[87] AR 34.

[88] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[89] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence

1  an ALJ need not address every piece of evidence, an ALJ "may not ignore

2  significant probative evidence that bears on the disability analysis."[90]  Here, the

3  Court is unable to determine whether the ALJ considered Dr. Genthe's opinion

4  that Plaintiff's symptoms would interfere with her ability to maintain employment.

5      To the extent that the Court has remanded the case for consideration of

6  Dr. Massoud and PA Fine's opinions and the recent medical evidence, the ALJ will

7  be required to reconsider the medical opinions in general.  The Court suggests that

8  the ALJ  more properly articulate his or her findings regarding the supportability

9  and consistency of Dr. Genthe's opinions and specifically address Dr. Genthe's

10  statement that Plaintiff would have limitations in her ability to obtain and

11  maintain employment.

12

13

14

15

16  _____

17  supporting the found conflict to permit the court to meaningfully review the ALJ's

18  finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the

19  ALJ to build an accurate and logical bridge from the evidence to her conclusions so

20  that we may afford the claimant meaningful review of the SSA's ultimate

21  findings.").

22  [90] *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1193 (9th Cir. 2022).

23

DISPOSITIVE ORDER - 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

    5.    <u>Summary</u>

    Because the ALJ did not give good reasons for her evaluation of the medical opinions in the record, a remand is warranted.  On remand, the ALJ is directed to properly consider the medical evidence and, if necessary, develop the record further by ordering a consultative examination or calling a medical expert to testify.

**B.**    **Plaintiff's Subjective Complaints: The Court finds the issue moot.**

    Plaintiff argues the ALJ failed to properly assess her subjective complaints. As discussed above, the ALJ failed to consider the medical record as a whole when considering the medical opinions.  Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

**C.**    **Remand for Further Proceedings**

    Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[91] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[92]

---

[91] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[92] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. Therefore, the ALJ should properly consider the opinion evidence and make findings at each of the five steps of the sequential evaluation process.

### IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 7 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 5th day of January, 2024.

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge

---

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).